In re ESTATE OF Evelyn L. ELKINS,

**James H. Gilbert, Appellant.**

No. 93–PR–1138.

District of Columbia Court of Appeals.

Submitted Oct. 20, 1994.
Decided March 27, 1995.

James H. Gilbert filed a brief pro se.

Before FERREN, TERRY, and STEADMAN, Associate Judges.

TERRY, Associate Judge:

This is an appeal from an order ratifying the Auditor–Master's accounting of an estate for which appellant was appointed conservator. Appellant contends that the Auditor's report erroneously holds him liable for various items totaling $1,592.98. He also challenges a finding by the Auditor which requires him to pay any penalties and interest that may accrue as a result of his failure to file income tax returns for the estate. We affirm in part and reverse in part.

## I

In May of 1984 appellant Gilbert was appointed successor conservator of the estate of Evelyn Elkins ("the ward") and served approximately three years in that capacity.[1] Upon the termination of his appointment in 1987, the court ordered the Auditor–Master to state an account of the ward's estate. The Auditor's report, filed May 18, 1989, recommended that judgment in the amount of $30,-106.94 be entered against Mr. Gilbert in favor of the estate. When Mr. Gilbert filed objections to the report, however, the court referred the matter back to the Auditor for reconsideration.

The Auditor–Master filed a new report on October 26, 1992. This second report acknowledged that the first report contained several errors, as Mr. Gilbert had asserted, but concluded nevertheless that Mr. Gilbert should reimburse the estate in the amount of $800.00 for personal property of the ward which he had abandoned in payment of a storage bill, plus $292.98 for funds withdrawn from the ward's bank account. In addition, the Auditor recommended that Mr. Gilbert pay $500.00 for the two Auditor's reports. The total amount of the proposed payment was $1,592.98. The report also recommended that Mr. Gilbert be held liable for any tax penalties or interest that might accrue as a result of his failure to file tax returns for the estate.

Although Mr. Gilbert filed objections, the trial court ratified the second Auditor's report and entered judgment against him for $1,592.98. Mr. Gilbert's motion to amend the judgment was denied, and this appeal followed.

## II

■ The trial court must accept the Auditor–Master's findings of fact unless they are clearly erroneous. Super.Ct.Civ.R. 53(e)(2); see Mayes v. Sanford, 641 A.2d 855, 856 (D.C.), cert. denied, 513 U.S. 946, 115 S.Ct. 356, 130 L.Ed.2d 311 (1994). Thus our review of the trial court's ruling is limited to determining whether the Auditor's report

was supported by the facts. We will not overturn a judgment based on the Auditor's findings unless those findings are clearly erroneous. Godette v. Estate of Cox, 592 A.2d 1028, 1032 (D.C.1991); Rosendorf v. Toomey, 349 A.2d 694, 699 (D.C.1975); David v. Bryant, 117 U.S.App.D.C. 266, 267, 328 F.2d 567, 568 (1964).

■ In this case the Auditor recommended that appellant Gilbert reimburse the estate for $800 worth of personal property which he turned over to a storage company. Mr. Gilbert maintains that this property, which consisted of furniture and other household items, was given to the storage company in payment of a $1,897.40 storage bill charged to the estate. Gilbert argues that he had the statutory power to dispose of the property and that it was in the best interest of the estate to do so. The Auditor's report stated that Gilbert had not paid storage fees during his accounting period. Although the report acknowledged that storage fees were accruing at the rate of $225 every quarter and that there was a past due balance of $2,150.86, the Auditor nonetheless found Mr. Gilbert liable for the value of the property because he offered "no evidence explaining why [his] actions in abandoning the tangible personalty, as opposed to liquidating or distributing it, should be approved in this manner...."

D.C.Code § 21–2070(c)(7) (1989) provides that a conservator, when "acting reasonably in efforts to accomplish a purpose of the appointment," may, without prior consent of the court, "acquire or dispose of an estate asset ... for cash or credit ... or abandon an estate asset." Additionally, the conservator may "settle a claim by or against the estate ... by compromise, arbitration or otherwise...." D.C.Code § 21–2070(c)(19). We agree with Mr. Gilbert that he was acting within these statutory powers when he turned the ward's personal property over to the storage company. In light of the mounting storage bills which had already accumulated to more than twice the value of the stored property, his decision to abandon the property was clearly in the best interest of

1. The record indicates that, at the time of Mr. Gilbert's appointment as conservator, Mrs. El-

kins was in the care of a nursing home. She died on June 19, 1986.

the estate. We therefore hold that Mr. Gilbert is not liable for the $800 worth of property that he abandoned.

■ The trial court also adopted the Auditor's recommendation that Mr. Gilbert reimburse the estate for the cost of the two Auditor's reports. The court based its ruling on a finding that there was no evidence that Gilbert had paid for the first report. Gilbert concedes that he owes $200 for the second report, but argues that he should not have to pay $300 for the first report because it contained several errors, and because the notice of the hearing before the Auditor–Master was sent to the wrong address.

It is evident from the record that that report was erroneous because it charged Gilbert with $30,106.94 of estate debt, most of which consisted of court-authorized expenditures (as the second report made clear). Furthermore, the record shows that notice of the hearing before the Auditor was sent to Gilbert's old address even though he had previously filed a change of address with the court. Thus he was not given an opportunity to contest the Auditor's findings before the report was presented to the court. We therefore hold that Gilbert should not be held liable for the $300 cost of the first report.

■ The Auditor found Gilbert liable for $292.98 which had been withdrawn from the ward's personal bank account but had not been accounted for. Mr. Gilbert asserts that this account was established before his appointment as conservator in order to provide for direct deposit of the ward's social security payments, from which automatic transfers could then be made to the nursing home for the benefit of the ward. He maintains that he did not make the withdrawals, but that they were made by the nursing home. Although the Auditor's report found this assertion "plausible," it nonetheless concluded that Gilbert should be held liable for the withdrawals unless he could provide evidence to support his claim.

D.C.Code § 21–2065 (1989) requires a conservator to "account to the court for administration of the trust upon resignation or removal. . . ." In this instance, although the court gave Mr. Gilbert ample time to present further evidence supporting his claim that the withdrawals were made by the nursing home, Gilbert failed to do so.[2] Because this was a relatively simple matter to prove and Gilbert had the burden of proving it, we hold that the trial court did not err in adopting this recommendation. *See Godette v. Estate of Cox, supra,* 592 A.2d at 1032 (personal representative held accountable for not providing evidence of cash transactions during the accounting period of the estate). *See also* 9 J. WIGMORE, EVIDENCE § 2486 (Chadbourn rev. 1981) (the burden of proof is "upon the party *to whose case the fact is essential* " (emphasis in original)).

■ Finally, Mr. Gilbert challenges that portion of the trial court's ruling which holds him liable for any penalties or interest charges that may accrue as a result of his failure to file tax returns for the estate. He argues that there is no evidence to show that he had a duty to file tax returns, that any penalty or interest is in fact due, or that the estate would be larger had the taxes been paid. These arguments are without merit. D.C.Code § 21–2063 (1989) provides that a conservator "shall act as a fiduciary and observe the standards of care applicable to trustees." The law generally imposes on a fiduciary both the power and the duty to file tax returns and to pay any taxes owed on behalf of the estate, and generally holds the trustee personally liable to the estate for any penalties, interest, or additional tax which may accrue as a result of the trustee's error. D.C.Code § 21–2070(c)(17) (1989); D.C.Code § 47–1805.2(2) (1989); 26 U.S.C. § 6012(b)(2) (1988); *see Jones v. Hagans,* 634 A.2d 1219, 1225 (D.C.1993).[3] We conclude, therefore,

---

**2.** The Auditor–Master was prepared to amend the report if Mr. Gilbert could submit evidence accounting for the withdrawals. At the time the report was filed, Gilbert stated that records from the nursing home were not yet available. The court gave Gilbert sixty days in which to submit records showing that the withdrawals were made by the nursing home, but he did not submit them.

**3.** Given Mr. Gilbert's statutory duty to pay the estate's income tax, his argument that there was no showing that the estate would be larger had the taxes been paid is entirely irrelevant.

that the trial court did not err by holding Gilbert accountable for his failure to file tax returns.

### III

We affirm the trial court's judgment insofar as it requires Mr. Gilbert to reimburse the estate for $292.98 for the unsubstantiated withdrawals from the ward's account and for any tax liabilities which may result from his failure to file tax returns. We reverse those portions of the judgment which require Gilbert to reimburse the estate for $800.00 worth of the ward's personal property and to pay $300.00 for the 1989 report of the Auditor–Master.

*Affirmed in part and reversed in part.*